First case this afternoon is People of the State of Illinois v. Kenneth Lemke, and is it Mr. Andrews? And sir, when you're ready, would you please proceed? Okay, please record, counsel. I represent Mr. Lemke, who shot his stepson to death. Mr. Lemke's only viable defense is that it was involuntary manslaughter. After two trials, Mr. Lemke has yet to have this defense presented to the trier of fact. In Mr. Lemke's first trial, his attorney presented plenty of evidence to support a verdict of involuntary manslaughter, but his attorney neglected to ask the trial judge to consider whether or not Mr. Lemke was guilty of involuntary manslaughter. This court reversed and banned it for the second trial. At the second trial, which is the one we're talking about now, counsel had the jury instructed on involuntary manslaughter but failed to present the most important evidence to the jury to support a verdict of involuntary manslaughter, and the murder verdict ensued. I would also point out that at the second trial, counsel actually asked the jury to acquit Mr. Lemke of involuntary manslaughter, thereby adopting the same all-or-nothing approach that this court found problematic in the first trial. What the attorneys in this case failed to present was evidence that this ancient weapon, this cold peacemaker, was prone to accidental discharge. That evidence is very important when it comes to sustaining a verdict of involuntary manslaughter. In this court's first opinion, this court pointed out that it's both Mr. Lemke's condition, he was drunk as a lord on drugs and had some physical ailments, but not only that but also the condition of the handgun involved that was important to sustain a verdict of involuntary manslaughter. But in this second trial, the jury only heard about Mr. Lemke's condition, that he was drunk, that he was using drugs, and that he had physical ailments. His attorneys at the second trial failed to call Detective Richard Seimer, who testified at the first trial. He's a gunsmith, he was conceded by the state to be an expert in firearms, and Detective Seimer at the first trial had described how prone to accidental discharge this weapon that dates from the era of the cowboys is. The failure to call Detective Seimer was the ineffective assistance of counsel. It was substandard performance. Counsel failed to call Detective Seimer, it was because they fundamentally misunderstood the law in this case. In his first opinion, this court found that Mr. Lemke could not raise the defense of accident. In other words, he could not exonerate himself by claiming that the shooting was an accident, because at a minimum, his behavior was reckless. Counsel misunderstood this to foreclose any evidence of an accidental discharge at all. Lead counsel explained in the post-conviction hearing that they did not call Detective Seimer, because they thought the accidental discharge of the weapon was relevant only to the defense of accident. And counsel correctly understood that this court had foreclosed using that as a defense in the sense of it would exonerate Mr. Lemke. Co-counsel elaborated somewhat by saying, we didn't think that the accidental discharge of the firearm was relevant to whether or not Mr. Lemke had acted involuntarily. So, indeed, both attorneys misunderstood this court's first opinion. This court stated in its first opinion that in this case, the condition of the defendant and the handgun could also be seen as supporting a conviction for involuntary manslaughter. Now, counsel typically has a lot of leeway in whether or not to call a witness. Some opinions even say you can't even question it. Those opinions are wrong. But at a minimum, there's a tremendous amount of leeway given to counsel whether or not to call a witness. But that leeway is not afforded counsel when the decision is based either on a failure to investigate, and that was not the case here, but the other exception is where the decision not to call a witness is based on a fundamental misunderstanding of law. And that is what happened here. Counsel simply did not understand that if the firearm discharged accidentally, that that was favorable to Mr. Lemke, that that would support his defense that he acted only recklessly, that he did not commit murder. He committed involuntary manslaughter. Now, the failure to call Detective Seimer was prejudicial, the second prong of the Strickland analysis. You know, counsel did present evidence that Mr. Lemke was intoxicated and had physical ailments, but there is no excuse for not presenting all of the evidence. The evidence that this court stated, you know, was important. For example, you know, it's fine to point out that Mr. Lemke is extremely intoxicated, but, you know, some people don't really realistically appreciate that, and they're not going to cut a break for somebody who's intoxicated. On the other hand, the accidental discharge of a firearm is something more objective, something that could happen to anybody. People are going to react better to that. And even if you had jurors who aren't offended by the fact that the defendant was extremely intoxicated, it's still going to make the defense of recklessness much better to present the evidence that this is an old-fashioned weapon that's prone to firing accidentally. Now, Detective Seimer's testimony would have established just how dangerous this gun was in terms of accidental discharge. This court, in its first opinion, stated that Detective Seimer testified it was possible on some occasion to strike the hammer and for the gun to go off by accident. The concurrence stated, again, this gun may well have discharged accidentally. You know, this gun is of such an old design that Detective Seimer testified that the best safety mechanism is to leave one chamber in the cylinder empty and to rest the hammer on the empty chamber, precisely because if the hammer's resting on a live round and something hits it, the gun goes off. That's how dangerous this gun was. So there was good evidence to show the jury that this was an old-fashioned design with an old-fashioned safety that was prone to accidental discharge, something that a drunken person waving a gun around probably could easily have accomplished. And the prejudice was exacerbated in this case by the prosecution's argument. The prosecutor argued that this gun could only be fired if it was cocked first and then the trigger was pulled. That's not correct. It could fire accidentally. Cocking it and pulling the trigger is the only proper way to fire the gun, but that's not the only way a gun can discharge. So the jury really needed to learn that there were ways for this gun to go off other than Mr. Lemke cocking it and then pulling the trigger, and that's what Detective Seimer would have presented. So in conclusion, you know, there's no question in this case that it was Mr. Lemke who shot and, you know, fatally wounded his stepson, none at all. This court held that there's no way he can characterize this as an accident. There's no way he can escape legal culpability for shooting his stepson. The only way, then, that Mr. Lemke could possibly escape a murder conviction and its harsh sentences is to convince a jury that he was guilty of acting recklessly, that he committed involuntary manslaughter. Now, in this court's first appeal, in Mr. Lemke's first appeal, this court held that there was a reasonable probability that a jury would convict Mr. Lemke of involuntary manslaughter. But that assumed that the jury would hear both Mr. Lemke's condition and the condition of the handgun. Mr. Lemke went back for his second trial, but the jury was only told about Mr. Lemke's condition. It was never told about the condition of the handgun, and that was because of counsel's fundamental misunderstanding of the law. Because the jury heard nothing about the dangerous nature of this handgun, Mr. Lemke should be granted a third trial where, finally, he can present his full defense of involuntary manslaughter to the trier of fat. Thank you. Thank you. Mr. Sanchez? May it please the Court? My name is David Sanchez. I'm here on behalf of the people. I want to first touch on the issue of forfeiture briefly before jumping into the merits. In this case, the defendant could have brought an effective assistance to counsel claim on direct appeal. He did not bring that on direct appeal, and he could not. Everything was in the record that he needed to litigate this claim, and therefore none of the exceptions articulated by the Supreme Court, People v. Williams, were present in this case. The defendant argues on page 2 and 3 of his reply brief that the Supreme Court case, the U.S. Supreme Court case, Massaro v. United States, supports the rule that ineffective assistance of counsel claims are better litigated in a collateral proceeding and not on direct appeal. Now, in that case, the Supreme Court held that any ineffective assistance of counsel claim could bypass the forfeiture doctrine. That case was not a constitutional case. It was not decided on constitutional grounds. Therefore, that case does not apply to Illinois state law. That case only applies to the federal procedure, and there is contrary Illinois case law, which has been cited on pages 8 through 10 of the state's answer brief, and there are additional cases to suggest that ineffective assistance of counsel claims can be forfeited if they are not raised on direct appeal when they could have been. To accept the defendant's argument in this matter would, in effect, create a fourth exception to the forfeiture doctrine, which Illinois case law does not support. And, indeed, this Court said in the first Blinke opinion that counsel misapprehended key elements of the law in his defense of the defendant, and that decision was not based on hearing testimony from counsel at an evidentiary hearing. In fact, the state contended at that case that the record contained no testimony from the defendant's trial counsel regarding the misunderstanding of the law, and this Court said testimony from defendant's counsel was not necessary. Now, I want to jump to the prejudice prong of Strickland, and on page 7 of the defendant's reply brief, he argues that Detective Seimer's testimony establishes that the cold peacemaker can fire accidentally when the hammer is down and when the trigger is not pulled. However, by his own testimony, Detective Seimer stated, well, you have to pull the hammer back to fire this firearm. He also said, if you have a finger on the trigger, and in this position here, if you would pull this back here and turn this hammer, this weapon would fire as many times as you do that. Otherwise, the only other way this weapon would fire is if you pull the hammer to the rear and then you pull on the trigger. He also said, well, you do have to cock the weapon in order for it to fire, and the only testimony he made as to whether or not the gun could discharge accidentally is this statement. He said, well, when this firearm was first developed, the recommended procedure for carrying this firearm in your holster was you always carried it on an empty cylinder. That way, if it fell off the horse or fell down, the firearm would not fire because there would be no cartridge underneath the hammer. And then the counsel had a follow-up question saying, so it's possible on some occasions to strike that hammer and pass the gun to go off? Is that your – I was going to say testimony, but it's cut off. And Detective Seimer says, it is possible, yes, sir. What does that testimony convey? It means that, sure, if you're sitting on top of a horse, you're probably about six feet off the ground, and you fall off that horse. The gun hammer strikes the hard floor, and that could potentially – the hammer could potentially strike the firing pin, and the gun could discharge accidentally. But that is not at issue in this case. Nothing in the record suggests that the defendant at any time fell from a high elevation or from any elevation at all, and that the hammer struck something hard, causing the gun to discharge. In fact, the record does show that the most reasonable inference is that the defendant was carrying the gun the entire time when it discharged. The weapon, on page 10 of the defendant's reply brief, he argues that the location of the hammer resting on a live ground when it was discovered is not an obvious evidence. However, this court and the circuit court found that this was highly critical in finding that the defendant was guilty of first-degree murder. The circuit court wrote that Seimer's testimony would not have helped rebut the inference of the affirmative specific action by the defendant to ready the gun for firing again and the affirmative specific action of then releasing the trigger. And then this court wrote in its second opinion, in its second Lemke opinion, in and of itself the evidence establishing that the revolver had to manually be cocked before it would fire and that the weapon was apparently cocked again after Albertson had been shot supports the inference that the defendant's act of firing the gun was a deliberate act despite his intoxication and carpal tunnel syndrome. Now, there was also additional evidence that would have supported a first-degree murder conviction. The record shows that the defendant was involved in a scuffle with Lance Albertson. At first, he tried to subdue Lance Albertson with a walking stick, but Lance took the stick away. Then the defendant walked approximately 69 feet back to his house. He grabbed and loaded the revolver. He walked 69 feet back to Lance's location. He pointed the gun at Lance. Despite Lance saying, what are you doing, Kenny? Stop it. Stop it. And the gun was discovered, as I said, with the hammer on a live round. Now, turning to the performance prong of Strickland, the defendant argues on page 4 of his reply brief that having Mr. Lemke testify would not have told the jury anything that he did not already know. But this is not the case. As the circuit court found, having Mr. Lemke testify would have subjected him to impeachment. The circuit court also found that neither the defendant's demeanor nor his testimony would have been compelling to a jury, even if he wasn't impeached. And this court held, in the first Lemke opinion, that the defendant's possession of the weapon and the situation as he described it was at least reckless. No reasonable trier of facts could have found that the defendant possessed a less culpable state of mind. Well, it was trial counsel's defense that the defendant was not guilty or, in the alternative, guilty of involuntary manslaughter. So if they wanted to pursue this not guilty verdict, they would have been unable to. But at the same time, they also wanted to pursue an alternative verdict. Furthermore, Lemke had testified, he would have introduced facts that were not presented in the trial, which would have supported a first-degree murder conviction. He testified that he test-fired the firearm and changed the cylinder on it so that it would fire properly, and that he did this just days prior to the incident, which suggests that he was very well-versed in how this gun operated and would know how to fire it. He said he had been around guns his whole life. He said there was no question in his mind that the gun was loaded on the night of the incident. He told Lance Albertson on the night of the incident that the gun was loaded. He said the carpal tunnel in his hand did not prevent him from knowing that a spinger was on the trigger of the gun. He also said that he re-cocked the gun after firing it. Now, if you make all those statements, you don't want those coming in if you're trying to get the defendant convicted of a lesser charge or acquitted. The defendant claims on page 5 of his reply brief that the State's theory that counsel was wise to pursue an all-or-nothing approach is at odds with this Court's decision in the first-monkey opinion. The State doesn't argue that it was wise to pursue an all-or-nothing approach. That's not the approach that was taken by defense counsel. The approach was to pursue a not-guilty verdict or, in the alternative, an involuntary manslaughter verdict. On page 5 of the reply brief, the defendant concedes that counsel presented evidence to support an involuntary manslaughter verdict, but that counsel failed to present the best evidence to support an involuntary manslaughter verdict. Well, we already discussed Steiner's testimony. That was of limited value in terms of proving that the gun accidentally discharged, but the evidence that he did show as to involuntary manslaughter was exactly the kind of evidence that trial counsel presented in People v. Wright, which this Court cited as being factually similar to the defendant's case. In People v. Wright, the defendant shot a gun accidentally, and it killed her daughter, and she was highly intoxicated. There was an expert witness put on the stand who testified that with the combination of the drugs she was taking and the alcohol she was under, she was under the influence, severely intoxicated, and couldn't have the mens rea of knowing murder. And that was exactly the approach that trial counsel pursued in this case. Moreover, under ineffective assistance of counsel analysis, decisions concerning which witnesses to call and what evidence to present ultimately rest with trial counsel, and mistakes in trial strategy or tactics or judgments do not of themselves render the representation incompetent. And I'll just close in saying that on behalf of the people, I respectfully request that this Court affirm the decision of the Circuit Court and deny the defendant post-conviction related claim. Thank you. A rebuttal? Well, you know, Massaro is only in there to explain the theory of why the evidence was inadequate to present this ineffectiveness claim on direct appeal. And if we need any more convincing, all we have to do is look at this Court's opinion in the second appeal, where the appellate counsel alleged that trial counsel was ineffective for failing to instruct the jury with a definition of recklessness. Now, there was no hearing in that to explain why counsel did or did not do that. And here's what this Court found. Under the circumstances presented here, the defendant is unable to overcome the presumption that counsel's decision not to tender an instruction, blah, blah, blah, was a matter of strategy as opposed to incompetent oversight. That's why we had to have the evidentiary hearing to prove that counsel did what they did because they misunderstood the law, that it was substandard. If this had been raised on direct appeal, this Court would have just said, well, we don't know why they didn't call the guy. Maybe it was a strategy. So that's my point there. It could not have been raised on direct appeal, at least not successfully. Now, as for the gun being cocked, you know, if I was a state's attorney in this case, that's what I'd be harping on, too. I mean, you know, he's cocked the gun a second time, maybe. So, you know, but that's a jury question. You know, Mr. Lemke admitted at the first trial that he found the gun after his stepson was shot and that the hammer was cocked, and he said he lowered the hammer. He said he had no idea why the hammer was cocked. You know, that's a jury question. We don't know enough about this gun. You remember to set the gun in the safety, you have to pull the hammer partially back and it slips into this notch safety. Does that advance the cylinder? I don't know whether it does or not, but you have to partially cock the gun. Maybe Mr. Lemke, as drunk as he is, is trying to pull the hammer back to put it in safety and it advances the cylinder. We don't know. You know, maybe he did cock it because he was going to shoot again. We don't know. It's a jury question. It should be decided by the trier of fact who sees Simers testify, who maybe sees Mr. Lemke testify, who sees Mr. Cooper, the state's expert, testify. It should be decided by a trier of fact and not by an appellate court. That's not a reason to affirm this case. Mr. Lemke should have once, should at one time have his defense presented in its entirety to a jury. You know, this is a terrible case. A guy either deliberately or accidentally shoots his stepson. And it's a death sentence for Mr. Lemke for murder. He might have a chance to get out if it's involuntary manslaughter. It's an important case. The evidence should be presented to a trier of fact, and that trier of fact should be asked to resolve the issue. And that's all that Mr. Lemke is asking for in this case. Thank you. Okay. Thanks to both of you for your arguments this afternoon. We'll provide you a decision at the earliest possible date. Thank you.